[Cite as *State v. Livingston*, 2022-Ohio-3312.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |     |                          |
|--------------------------|-----|--------------------------|
| STATE OF OHIO,           |  :  | APPEAL NO. C-210378      |
|                          |     | TRIAL NO. B-0800258B     |
| Plaintiff-Appellee,      |  :  |                          |
|                          |     |                          |
| vs.                      |  :  | *O P I N I O N.*         |
|                          |     |                          |
| MARTY LEVINGSTON,        |  :  |                          |
|                          |     |                          |
| Defendant-Appellant.     |  :  |                          |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:    September 21, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ohio Innocence Project* and *Donald Caster*, for Defendant-Appellant.

**Bock, Judge**.

{¶1}    Defendant-appellant Marty Levingston appeals the Hamilton County Common Pleas Court's judgment denying his application for postconviction DNA testing. Because the trial court did not follow the appropriate statutory procedure before rejecting Levingston's application, we reverse the trial court's judgment and remand for further proceedings.

{¶2}    Following a jury trial, Levingston was convicted of murder, felonious assault, several specifications, and tampering with evidence. He is currently serving a sentence of 23 years to life in prison. Levingston unsuccessfully challenged his convictions on direct appeal, *State v. Levingston*, 1st Dist. Hamilton No. C-090235, 2011-Ohio-1665, *appeal not accepted*, 131 Ohio St.3d 1477, 2011-Ohio-4751, 953 N.E.2d 843, and in a postconviction petition, *State v. Levingston*, 1st Dist. Hamilton No. C-140194 (Dec. 5, 2014), *appeal not accepted*, 142 Ohio St.3d 1466, 2015-Ohio-1896, 30 N.E.3d 974.

{¶3}    In 2021, due to developments in Mini-STR or "touch DNA" testing that greatly increased the type of evidence that can now be tested for DNA profiles, Levingston applied for postconviction DNA testing. Noting that the identity of the perpetrator was an issue at trial, Levingston requested touch DNA testing on the following items collected at the crime scene, explaining that these items had not been tested for DNA or fingerprints during the investigation: (1) 13 cartridges/shell casings; (2) two bullets; (3) two projectiles from two different .45-caliber weapons; (4) a .40-caliber gun magazine with seven cartridges in it; (5) two projectiles lodged in cars in the Hawaiian Terrace parking lot; and (6) two projectiles recovered from the victim's body.

{¶4}    The trial court denied Levingston's application without a hearing. In its entry, the common pleas court found that the evidence Levingston wanted tested had been collected by police during their investigation, that Levingston, having been

2

convicted of murder, was eligible to apply for postconviction DNA testing, and that the state had not included, in its response to Levingston's application, "an inventory of biological evidence or biological material." The trial court then found that there was nothing in the record to demonstrate that a sample of biological material existed to be tested and denied Levingston's application.

{¶5} Levingston now appeals, arguing in a single assignment of error, that the trial court erred in rejecting his application. We review a trial court's denial of an application for postconviction DNA testing for an abuse of discretion. *State v. Smith*, 1st Dist. Hamilton No. C-190558, 2021-Ohio-1389, ¶ 4, citing *State v. Conner*, 2020-Ohio-4310, 158 N.E.3d 162, ¶ 12.

{¶6} A common pleas court determines whether to grant an R.C. 2953.73 application for postconviction DNA testing under the criteria and procedures set forth in R.C. 2953.74 through 2953.81. R.C. 2953.73(D). Applicable to this case are R.C. 2953.74(B) and (C) and 2953.75.

{¶7} Where DNA testing was not performed at trial, R.C. 2953.74(B) provides that a court may only accept an eligible inmate's application for DNA testing if the "inmate shows that DNA exclusion * * * would have been outcome determinative at that trial stage in that case." And R.C. 2953.74(C) provides that a court may only accept an application for DNA testing if all the following apply:

> (1) The court determines **pursuant to section 2953.75** of the Revised Code that biological material was collected from the crime scene or the victim of the offense * * * and that the parent sample of that biological material * * * still exists at that point in time.
>
> (2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:

3

(a) The parent sample of the biological material so collected contains scientifically sufficient material to extract a test sample.

(b) The parent sample of the biological material so collected is not so minute or fragile as to risk destruction of the parent sample by the extraction described in division (C)(2)(a) of this section; provided that the court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.

(c) The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3) The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender.

(6) The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

(Emphasis added.) R.C. 2953.74(C)(1)-(6).

{¶8} R.C. 2953.75(A) provides in relevant part: "If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court shall require the prosecuting attorney to use reasonable diligence to determine whether biological material was collected from the crime scene or victim of the offense * * * and whether the parent sample of that biological material still exists at that point in time." R.C. 2953.75(B) then requires the prosecuting attorney "to prepare a report that contains the prosecuting attorney's determinations under [R.C. 2953.75(A)] and [to] file a copy of the report with the court and provide a copy to the eligible offender and the attorney general."

{¶9} Here, "biological material" is defined as "any product of a human body containing DNA" and "parent sample" is defined as "the biological material first obtained from a crime scene or a victim of an offense * * * and from which a sample will be presently taken to do a DNA comparison to the DNA of the subject offender under sections 2953.71 to 2953.81 of the Revised Code." R.C. 2953.71(B) and (M).

{¶10} A trial court has discretion "whether it will first determine whether the eligible inmate has demonstrated that the DNA testing would be outcome-determinative [under R.C. 2953.74(B)] or whether, [under R.C. 2953.74(C)(1)] it should order the prosecuting attorney to prepare and file a DNA-evidence report pursuant to R.C. 2953.75." *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, ¶ 36.

{¶11} The court rejected Levingston's application after finding that R.C. 2953.74(C)(1) had not been satisfied. That section requires not only a finding that biological material was collected from the crime scene or victim of the offense, but that that sample still exists. Additionally, the court found that because Levingston did not satisfy R.C. 2953.74(C)(1), he also did not satisfy R.C. 2953.74(C)(2) or (6), which required a determination of whether the existing parent sample was suitable for testing or whether the sample had been out of state custody or tampered with since collected.

{¶12} Here, the common pleas court did not determine whether postconviction DNA testing would be outcome determinative. Instead, it exercised its discretion in determining first whether R.C. 2953.74(C)(1) had been satisfied. But the court failed to make that determination pursuant to R.C. 2953.75, which requires the court to order the state to use reasonable diligence to investigate whether biological material had been collected and whether a sample of that material still existed and then present those findings in a DNA-evidence report to the court. The court never ordered the state to investigate and prepare a DNA-evidence report. Without that information, the court could not reasonably determine whether a parent sample still existed to be tested. Because the court did not follow the proper statutory procedure in considering Levingston's application, its finding that the record does not demonstrate that a sample of biological material exists is arbitrary. Additionally, the trial court's findings that Levingston did not satisfy the criteria set forth in R.C. 2953.74(C)(2) and (6), which require, respectively, that a testing authority determine if the parent sample is sufficient for testing and whether that sample has stayed within the state's chain of custody, were

arbitrary as determination of those criteria is based on whether R.C. 2953.74(C)(1) has been satisfied.

{¶13} We reject the state's argument that it does not have to comply with R.C. 2953.75 because Levingston has not pointed to any evidence that was collected during the investigation that may contain biological material. As noted earlier, biological material means "any product of a human body containing DNA." R.C. 2953.71(B). Such products of the human body include blood, semen, hair, saliva, and skin tissue. *See* R.C. 2933.82(A)(1)(a)(ii) (defining "biological evidence" as any item that contains these types of products). It is not unreasonable to conclude that skin tissue or other products of the human body containing DNA may be found on inanimate objects such as bullets or shell casings, items that Levingston requested be tested for DNA. *See State v. Emerick*, 2d Dist. Montgomery No. 24215, 2011-Ohio-5543, ¶ 57 ("It is undisputable that biological materials are commonly located on other items.").

{¶14} In considering whether biological material had been collected and whether a sample of that material still existed under R.C. 2953.74(C)(1), the common pleas court failed to make that determination in compliance with R.C. 2953.75. Because the court failed to follow statutory procedure when it did not require the prosecuting attorney to file a DNA-evidence report prior to determining if R.C. 2953.74(C)(1) had been satisfied, we hold that it abused its discretion in rejecting Levingston's application for postconviction DNA testing and sustain the single assignment of error. On remand, if the court chooses to exercise its discretion to first determine whether R.C. 2953.74(C)(1) has been satisfied, we instruct the court to follow the appropriate statutory procedure. Accordingly, we reverse the common pleas court's judgment and remand this matter for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.